# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION



| | |
|---|---|
| CONSTANCE R. HEATH, as natural mother and custodial parent of DKT, a minor, | § § § § |
| **Plaintiff,** | § |
| vs. | § § |
| WALKER COUNTY BOARD OF COMMISSIONERS, a county commission; WALKER COUNTY, ALABAMA, a municipality; WALKER COUNTY JAIL, a jail; WALKER COUNTY SHERIFF'S DEPARTMENT, a county department; JOHN MARK TIREY, an individual; WILLIAM LEE SMITH, an individual; TRENT McCLUSKEY, an individual; DUAL TUBBS, an individual; LARRY FARRIS, an individual; BRUCE HAMRICK, an individual; BEN HUGGINS, an individual; RANDY BRIDGES, an individual, | § § § § § § § § § § § § § § § § § |
| **Defendants.** | § |

CIVIL ACTION NO.

_____

## COMPLAINT

### PRELIMINARY STATEMENT

1.    Plaintiff, Constance R. Heath, as natural mother and custodial parent of DKT, a minor, brings this suit under 42 U.S.C. § 1983 and § 1988 for violations of DKT's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

2.    Plaintiff also brings this suit under § 12-15-61 of the Alabama Code and the common laws of the State of Alabama as well as 42 U.S.C. § 5633(a)(12), (13) and (14) to

address the breach of duty owed to DKT which directly and proximately resulted in damages as more specifically identified in Count I.

3.    On information or belief, the Defendants followed a custom of failing to provide for the safety of minor detainees, who are routinely and unnecessarily exposed to a risk of harm when housed with adult prisoners. Minor detainees are routinely degraded, assaulted and/or raped by adult prisoners. Furthermore, these detained minors are subjected to threats of physical harm, including death for resisting sexual victimization. The procedures utilized by jail officials are inadequate to prevent the mixing of minor detainees and adult prisoner inmates or to prevent the sexual and/or physical assault of minors by adult prisoners.

4.    On information and belief, all Defendants were aware of the victimization of minor detainees at Walker County Jail and the risk and danger to which they subjected DKT, a minor detainee, but failed to take timely and adequate measures to prohibit this harm.

5.    On information and belief, John Mark Tirey, the Walker County Sheriff, and Trent McCluskey, jail administrator, were aware of the misconduct of jail employees at Walker County Jail, and the injury and danger to which they subjected DKT, but failed to take timely and adequate measures to prevent this harm.

## JURISDICTION

6.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a)(3) and (a)(4).

## VENUE

7.    Venue in this District is proper as to all Defendants pursuant to 28 U.S.C. §

1391(b)(2) because the events giving rise to the claims occurred within this district.


## PARTIES

8.    Plaintiff, Constance R. Heath, is the natural and custodial parent of DKT, a minor,

a resident of Walker County, Alabama and over the age of 19.

9.    At all times mentioned in this complaint, the Walker County Board of

Commissioners owned, operated, maintained and controlled a jail located at 2001 2nd Avenue,

Jasper, Alabama 35501. Under Alabama law the Defendants, Walker County, Alabama; Walker

County Board of Commissioners (the "Board"); Dual Tubbs; Larry Farris; Bruce Hamrick; Ben

Huggins; and Randy Bridges, had ultimate responsibility for overseeing the operation and

maintenance of the Walker County Jail. Further, the Board has ultimate responsibility for the

operation of the jail facilities and insuring jail officials' compliance with federal and state law

and official policy.

10.    Defendants, Walker County, Alabama, through the Walker County Board of

Commissioners, Dual Tubbs, Larry Farris, Bruce Hamrick, Ben Huggins, and Randy Bridges,

were responsible for the proper maintenance and funding of the jail as provided under Alabama

law. Defendant, Walker County, Alabama has the ultimate responsibility for overseeing the

actions of the Walker County Sheriff.

11.    Under Alabama law, the Defendant Sheriff, John Mark Tirey, was responsible for

the general operation, supervision and control of the jail.

12.    Defendant, John Mark Tirey, was at all times mentioned in the complaint, and

still is, employed by Walker County as the Sheriff of Walker County. As the Sheriff of Walker County, Alabama, John Mark Tirey was responsible for the general operation, supervision and control of the Walker County Jail, as well as daily oversight of the prisoners located at Walker County Jail.

13.    Defendant, Trent McCluskey, was the jail administrator and responsible for the daily supervision and operation of the jail in accordance with the jail's policies and procedures.

14.    At all relevant times, all Defendants acted under color of state law, statute, ordinance, regulations, custom, practice or usage by the Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's Department; John Mark Tirey; Walker County Jail; and Trent McCluskey in violation of DKT's constitutional rights.

15.    At all relevant times, Defendant employees, agents and servants of Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's Department; John Mark Tirey; Walker County Jail; and Trent McCluskey were acting within the line and scope of their employment.

16.    Plaintiff sues each and every Defendant individually and in their official capacities.

17.    The Plaintiff avers that Defendants, Dual Tubbs, Larry Farris, Bruce Hamrick, Ben Huggins, Randy Bridges, John Mark Tirey and Trent McCluskey , were at all times material to this action, adult resident citizens over the age of nineteen residing in Alabama.

18.    The Plaintiff has provided  notice of this claim to the Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department and John Mark Tirey,  on or

about April 8, 2004,  pursuant to and in compliance with Alabama Code  § 11-47-23 and §11-47-

192. The claim, as of the date of the filing of this complaint, has been pending more than six

months and has not been acted upon.

## STATEMENT OF FACTS

19.    Upon information or belief, the conditions of the Walker County Jail were the

subject of a class action lawsuit , *Randy Terrell, at al., v. Tommy Herring, et al.,* Civil Action

Number 93-B-2690-J, filed in the United States District Court, Northern District of Alabama,

Jasper Division, on December 12, 1993, on behalf of all, then present, and future prisoners or

detainees incarcerated in the Walker County Jail.

20.    On or about February 28, 1995, a consent decree was entered on behalf of the

Defendants, Walker County Board of Commissioners; Walker County, Alabama; and Walker

County Sheriff. This decree, which is attached hereto and made a part hereof as Exhibit "A", was

approved by District Judge Sharon L. Blackburn on or about March 16, 1995.

21.    Pursuant to the consent decree the present Walker County Jail was to be

constructed, maintained and operated pursuant to certain and specific policies, practices,

provisions and privileges, which were reduced to writing.

22.    Upon information and belief, Walker County, Alabama; Walker County Board of

Commissioners; Sheriff of Walker County; and the Chief Jailer of Walker County were

Defendants in the aforementioned matter, and were given notice of final approval of the consent

decree and the entry of the Order granting approval of the consent decree.

23.    Upon information and belief, Walker County, Alabama; Walker County Board of

Commissioners; Sheriff of Walker County; and the Chief Jailer of Walker County were also advised of the contents of the Order, the binding effect of the Order and the ongoing nature of compliance with regard to the policies, practices, provisions and privileges as detailed by the Order.

24.     Upon information and belief, contained within the consent Order were numerous provisions, including specific provisions providing for the reduction of overcrowding, space requirements for each inmate, guard monitoring of inmates, intercommunication system, classification of inmates, and the segregation of minors from adult inmates.

25.     Upon information and belief, the Order required that policies and procedures for the operation of the Walker County Jail be committed to writing in the form of a policy and procedure manual. Plaintiff further avers that the Order contained specific provisions providing staffing and training requirements. Mandatory training was to be conducted in all areas covered by the Order. There was also to be specific training regarding the implementation of the Order and the policy and procedure manual.

26.     Upon information and belief, the present existing Walker County Jail is located at 2001 2nd Avenue, Jasper, Alabama.

27.     Plaintiff avers that the Plaintiff's minor son, DKT, a minor male with no prior prison experience, came into the custody, care and supervision of all the Defendants on or about January 25, 2004. DKT was a sixteen year old male. Plaintiff further avers that on said date, DKT was transferred from the City of Jasper Juvenile Detention Facility to the Walker County Jail pursuant to an order entered by a Circuit Court Judge for Walker County. Plaintiff further alleges that on or about January 25, 2004, DKT was processed and detained at the Walker County Jail.

28.    Plaintiff avers that on or about February 9, 2004, DKT was placed in a cell with a convicted adult felon, William Lee Smith, who was much larger and older than DKT.

29.    Plaintiff alleges that on or about February 9, 2004, Smith fashioned a metal shank from a razor blade provided to him by employees, agents and servants of Walker County Board of Commissioners; Walker County, Alabama; Walker County Sheriff's Department; John Mark Tirey; Walker County Jail; and/or Trent McCluskey.

30.    Plaintiff avers that on or about February 9, 2004, William Lee Smith attacked DKT from behind, placed the metal shank to DKT's neck, and violently raped DKT.

31.    Plaintiff alleges that the agents of the Defendants did not respond to DKT's requests for help in a timely manner. Further, the "emergency button" located nearby was inaccessible and/or inoperable on the day of the attack on DKT.

32.    All Defendants in their official and individual capacities knew or should have known that the housing of minor detainees with known and dangerous adult prisoners created an unacceptable risk and danger of violence, injury and harm to the minor detainee. Further, Defendants knew or should have known that the housing of minor  detainees with adult inmates, understaffing, inadequate supervision and monitoring of inmates and inadequate training of employees created an unacceptable risk of violence, injury and harm.  Further, all the Defendants in their official and individual capacities knew or should have known that such deliberate indifference would likely cause the harm suffered by DKT.

33.    Defendants knowingly and intentionally violated the consent decree by failing to comply with its terms. Defendants knowingly and intentionally violated practices and standards set for correctional facilities, including, but not limited to:

(a)    Failing to classify inmates and separate sentenced inmates from unsentenced

inmates, serious offenders from less serious offenders, inmates waiting trial from those who had been sentenced, misdemeanants from felons, and adults from minors.

(b)    Failing to provide sufficient and qualified personnel to supervise and protect inmates.

(c )    Failing to provide a functioning, operational two-way communication system and/or two-way audio or audio and video communication system capable of alerting personnel, so they could respond to emergencies including a sexual assault.

<u>(d)</u>    Failing to provide adequate space per inmate.

(e)    Failing to adequately train employees who supervised and protected inmates by failing to create and implement a policies and procedures manual as required by the Consent Order; failing to complete the required number of hours of correctional training in an accredited program; and failing to acquire the required number of formal continuing education training courses.

## <u>COUNT I</u>

34.    The Plaintiff adopts each and every material averment of Paragraphs 1 through 33 and incorporates them by reference as if fully set out herein.

35.    At the time made the basis of this suit and prior thereto, the Defendants owed a duty to DKT to prevent him from being physically and/or sexually assaulted while in the care, custody and control of the Defendants.

36.    At the time made the basis of this suit and prior thereto, the Defendants knew of this legal obligation and knew their actions, omissions, and inactions created a substantial risk of serious injury to DKT.

37.    Defendants acted with deliberate indifference to DKT's personal safety, failed to protect him from substantial risk of serious harm in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C.§ 1983.

38.    Plaintiff avers that at the time of and prior to the occurrence made the basis of this complaint, the Defendants owed a duty to the Plaintiff's minor son not to violate his rights guaranteed by the Fifth, and Fourteenth Amendments to the United States Constitution and guaranteed by 42 U.S.C. § 1983, including his right not to be deprived of his right to life, liberty and property without due process of law and his right not to have cruel and unusual punishment inflicted upon him.

39.    That at the time made the basis of the suit and prior thereto, the Defendants owed DKT a duty to investigate and hire employees that were of such character and temperament so as not to engage in unlawful, torturous and constitutionally prohibitive conduct in connection with their duties and responsibilities as employees of the Walker County Board of Commissioners; Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark Tirey; and Trent McCluskey.

40.    Plaintiff alleges that at the time of the incident made the basis of this suit and prior thereto, the Defendants owed the Plaintiff's minor son a duty to properly and adequately train and supervise their employees as well as a duty to inspect, monitor, and supervise the jail facility at the Walker County Jail in such a fashion so as to prevent inmates therein from being physically assaulted and subjected to torturous conduct in violation of their civil rights.

41.    At all times material hereto, the Defendants, Walker County Sheriff's Department, James M. Tirey; and Trent McCluskey, were under a duty to supervise the Plaintiff's minor son, DKT's, arrest, transport, and detention at Walker County Jail, and prevent him from being subjected to physical and/or sexual assault, torturous conduct, and violations of his civil rights at the Walker County Jail.

42.    Plaintiff avers that on the occasion made the basis of this suit and prior thereto,

the Defendants, including James Mark Tirey, Trent McCluskey and the Sheriff Department employees, were under a duty to provide for the safety and welfare of inmates of the Walker County Jail including the Plaintiff's minor son and to prevent persons from being allowed to subject DKT to physical and/or sexual assault, torturous conduct and violations of his civil rights, and further were under a duty to promulgate, institute, and follow rules, regulations, protocols, practices and guidelines for the supervision and safety of those persons such as DKT who had been arrested, transported and housed as a detainee in the Walker County Jail.

43.     The Plaintiff avers that the Defendants, including Walker County Board of Commissioners; Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark Tirey; and Trent McCluskey, breached one or more of the duties set forth in the previous paragraphs above by allowing or permitting the aforesaid conduct to occur on the date of the incident made the basis of this suit by failing to institute, instituting inadequately, or failing to follow adequate hiring, supervision, monitoring, and retention procedures;  training and supervisory procedures; supervision and monitoring procedures for the jail; supervision of employees of the Walker County Sheriff's Department  and while on the premises of the jail and Walker County  facility; procedures for the safety and welfare of inmates of the Walker County Jail; and preventing physical and/or sexual assault, torturous conduct and deprivation  of the DKT's civil rights while confined in the Walker County Jail.

44.     The absence, failure to institute and failure to follow programs, protocols, rules, regulations, guidelines, customs, or practices as described above, were inherently inadequate so as to constitute a reckless disregard of and deliberate indifference to the safety and rights of DKT guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and  42 U.S.C. § 1983 as well as the Alabama Constitution, statutory laws and common law.

45.    Plaintiff avers that to the extent the existing absence of policies, procedures, patterns and customs referred to above were allowed to exist at the time of the incident made the basis of this suit and prior thereto, such constitutes a reckless disregard of and deliberate indifference to the safety and rights of the Plaintiff's minor son guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 as well as the Alabama Constitution, statutory laws and common law.

46.    Plaintiff avers that the Defendants, John Mark Tirey and Trent McCluskey, acting individually and on behalf of the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's Department; and Walker County Jail, did knowingly and intentionally violate the DKT's rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 through the previously described conduct.

47.    Plaintiff avers that as a direct or proximate result of the use of or absence of policies, practices, patterns and customs maintained by the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail;  John Mark Tirey; and Trent McCluskey, failure to institute or follow policies, practices, patterns and customs as set forth above, deliberately and with indifference, DKT was deprived of those rights guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

48.    Plaintiff avers that as a direct or proximate result of the aforesaid violation of DKT's constitutional, statutory and common rights by the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark

Tirey; and Trent McCluskey, acting within the scope of their employment, DKT was caused to

suffer the following injuries and damages to-wit:

> He was caused to suffer severe physical trauma and invasion of his person; he was
> caused to suffer rectal intercourse; he was caused to suffer a rectal tear; he was
> caused to suffer exposure to sexually transmitted diseases; he was caused to suffer
> emotional distress; he was cause to suffer panic attacks; he was caused to suffer
> recurrent flashes; he was caused to suffer fear of strangers; he was caused to suffer
> generalized anxiety; he was caused to suffer emotional distress and mental
> anguish; he was caused to become depressed; and he was caused to suffer
> anguish, insecurity, self-revulsion, humiliation and embarrassment, he was caused
> pain and suffering, all to his detriment.

WHEREFORE, the Plaintiff, DKT, claims of the Defendants, Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark

Tirey; and Trent McCluskey, separately and severally, damages in excess of the jurisdictional

requirements of this Court in an amount to be determined by a struck jury plus costs and attorney

fees pursuant to 42 U.S.C. §1988 and any such other relief as this Court may deem just and

equitable.

## COUNT II

49.     Plaintiff adopts each and every material averment of Count I and incorporates it

by reference as if fully set out herein.

50.     Plaintiff avers that on the date of the incident made the basis of this suit and prior

thereto, the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris;

Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama, had knowledge or

should have had knowledge that the Defendants, John Mark Tirey and Trent McCluskey,

engaged in prior conduct so as to be unfit to serve or continue to serve as Sheriff and Jail

Administrator and despite this knowledge, retained or continued to allow John Mark Tirey to

serve as Walker County Sheriff and Trent McCluskey as Jail Administrator thereby allowing

them to engage in the conduct set forth in this complaint.

51.    Plaintiff avers that the Defendants, Walker County Board of Commissioners; Dual

Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama,

continued to allow the Defendants, John Mark Tirey and Trent McCluskey, to continue to act as

the Walker County Sheriff and Trent McCluskey as Jail Administrator and their failure to

adequately monitor and evaluate their actions and activities as were such as to constitute a

reckless disregard of and deliberate indifference to the safety and rights of DKT guaranteed to

him by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §

1983 as well as the Alabama Constitution, statutory laws and common law.

52.    Plaintiff avers that on the date of the incident made the basis of this suit and prior

thereto, the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris;

Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County

Sheriff's Department; Walker County Jail; John Mark Tirey; and Trent McCluskey, had

knowledge or should have had knowledge that their employees engaged in prior conduct so as to

be unfit to serve or continue to serve as a guard and/or jailer and despite this knowledge, hired,

retained, or continued to allow their employees to serve as guards and/or jailers at the Walker

County Jail thereby allowing them to engage in the conduct set forth in this complaint.

53.    Plaintiff avers that the Defendants, Walker County Board of Commissioners, Dual

Tubbs, Larry Farris, Bruce Hamrick, Ben Huggins, Randy Bridges, Walker County, Alabama,

Walker County Sheriff's Department, Walker County Jail, John Mark Tirey and Trent

McCluskey continued to allow their employees to continue to act as guards and/or jailers for the Walker County Jail and their failure to adequately monitor and evaluate their actions and activities as guards and/or jailers for the Walker County Jail were such as to constitute a reckless disregard of and deliberate indifference to the safety and rights of DKT guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 as well as the Alabama Constitution, statutory laws and common law.

WHEREFORE, the Plaintiff, Constance R. Heath, as natural mother and custodial parent of DKT, a minor, demands judgment against the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's Department; Walker County Sheriff; John Mark Tirey; and Trent McCluskey, jointly and severally, damages in excess of the jurisdictional requirements of this Court in an amount to be determined by a struck jury plus cost and attorney fees pursuant to 42 U.S.C. § 1983 and such other relief as this Court may deem just and equitable.

## COUNT III

54.    The Plaintiff adopts each and every material averment of Count I and Count II and incorporates them by reference as if fully set out herein.

55.    Walker County, Alabama, owns the Walker County Jail. The Walker County Board of Commissioners by its individual commission members and Defendants John Mark Tirey and Trent McCluskey are the ultimate authorities responsible for making official policy and for conducting the operation and management of the Walker County Jail and have custody of all persons detained or incarcerated in the Walker County Jail.

56.    Defendants, John Mark Tirey; Trent McCluskey; Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County Sheriff's Department, and Walker County, Alabama, negligently operated and

managed the Walker County Jail by hiring, retaining and entrusting the Walker County Jail to

their employees who were known or should have been known to Defendants to be of such a poor

moral character, temperament and disposition as to be totally unfit to be hired and retained as jail

guard employees placed in charge of detainees and prisoners at the Walker County Jail.

   57. Defendants, John Mark Tirey; Trent McCluskey; Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;Walker

County Sheriff's Department; and Defendant Walker County, Alabama, negligently operated and

managed the Walker County Jail by failing to adopt, incorporate and enforce such rules,

regulations, policies and procedures for the operation and management of the Walker County Jail

as would reasonably protect DKT and others detained or incarcerated.

   58. Defendants, John Mark Tirey; Trent McCluskey; Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County Sheriff's Department and Walker County, Alabama, negligently operated and

managed the Walker County Jail by failing to adopt, incorporate and enforce provisions provided

by the judicially approved Consent Order entered in *Randy Terrell, at al., v. Tommy Herring, et

al.,* including those specific provisions providing for the reduction of overcrowding, space

requirements for each inmate, guard monitoring of inmates, intercom system, classification of

inmates, and the segregation of minors from adult inmates.

   59. Defendants, John Mark Tirey; Trent McCluskey; Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County Sheriff's Department; and Walker County, Alabama, negligently operated and

managed the Walker County Jail by failing to adopt, incorporate and enforce provisions provided

by judicially approved Consent Order entered in *Randy Terrell, at al., v. Tommy Herring, et al.*,

including those specific to staffing and training requirements, the requisite policies and

procedures manual, as well as the full implementation of contents of the Consent Order.

      60.     Defendants, John Mark Tirey; Trent McCluskey; Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County Sheriff's Department; and Walker County, Alabama, negligently operated and

managed the Walker County Jail by failing to properly supervise and review the operation and

management of the Walker County Jail and the activities and work performance of their

employees.

      WHEREFORE, the Plaintiff, Constance R. Heath, as natural mother and custodial parent

of DKT, a minor, demands judgment against the Defendants, Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark

Tirey; and Trent McCluskey, jointly and severally, for damages in excess of the jurisdictional

requirements of this Court in an amount to be determined by a struck jury, plus cost and attorney

fees pursuant to 42 U.S.C. § 1988 and such other relief as this Court may deem just and

equitable.

## COUNT IV

      61.     The Plaintiff adopts each and every material averment of Count I, Count II and

Count III and incorporates them by reference as if fully set out herein.

      62.     The Plaintiff further alleges that the Defendants, Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department; John Mark Tirey; and Trent McCluskey conduct, which is more fully described in Count I , Count II, and Count III was so outrageous in character and so extreme in degree so as to go beyond all bounds of decency and shock the conscious of a civilized society. The emotional stresses the Defendants caused DKT to suffer were so severe that no reasonable person could be expected to endure the stress.

63.    The Plaintiff avers that as a direct or proximate result of the Defendants', Walker County Board of Commissioners; Walker County, Alabama; Water County Sheriff's Department; Walker County Jail; John Mark Tirey; and Trent McCluskey, DKT was caused to suffer injuries and damages more fully described in Count I including, but not limited to, severe emotional distress, mental anguish, and excruciating pain as a result of the actions of the Defendants.

WHEREFORE, the Plaintiff, Constance R. Heath, as natural mother and custodial parent of DKT, a minor, claims of the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark Tirey; and Trent McCluskey, separately and severally, damages in excess of the jurisdictional requirements of this Court plus cost and such other relief as this Court may deem just and equitable pursuant to 42 U.S.C. § 1988.

## COUNT V

64.    The Plaintiff adopts each and every material averment of Count I, Count II, Count III, Count IV and Count V and incorporates them by reference as if fully set out herein.

65.    The Plaintiff further alleges that on February 9, 2004, one of the Defendants'

employees acting as an agent, servant, and employee of the Defendants, Walker County,

Alabama; Walker County Sheriff's Department; Walker County Board of Commissioners; Dual

Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges; Walker County Jail; John

Mark Tirey; and Trent McCluskey, did, while DKT was under the control of the Defendants, so

intentionally and deliberately fail to intervene or prohibit the physical and sexual assault of

DKT. The aforesaid acts and omissions of the Defendants' employees were wrongful and with

reckless indifference.

      66.     The Plaintiff further alleges that the Defendants' employee guards did so

negligently and/or wantonly conduct himself as to cause or permit DKT to be physically violated,

abused and battered while under the control and supervision of Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark

Tirey; and Trent McCluskey.

      67.     The Plaintiff further avers that as a direct or proximate result of the aforesaid

actions and activities of the Defendants' employee guards when combined with the activities of

the Defendants, Walker County Board of Commissioners; Dual Tubbs; Larry Farris; Bruce

Hamrick; Ben Huggins; Randy Bridges; Walker County, Alabama; Walker County Sheriff's

Department; Walker County Jail; John Mark Tirey; and Trent McCluskey, the Plaintiff's minor

son, DKT, was injured and damaged, including suffering physical injury, extreme mental

anguish, mental anguish and suffering; permanent medical injury; and permanent mental injury

as more fully described in Count I and adopted by reference as if fully stated in this Count.

      WHEREFORE, the Plaintiff, DKT, claims of the Defendants, Walker County Board of

Commissioners; Dual Tubbs; Larry Farris; Bruce Hamrick; Ben Huggins; Randy Bridges;

Walker County, Alabama; Walker County Sheriff's Department; Walker County Jail; John Mark Tirey; and Trent McCluskey, separately and severally, damages in excess of the jurisdictional requirements of this Court in an amount to be determined by a struck jury plus costs and attorney fees pursuant to 42 U.S.C. §1988 and any such other relief as this Court may deem just and equitable.

## COUNT VI

68.    The Plaintiff adopts each and every material averment of Count I, Count II, Count III, Count IV, and Count V and incorporates them by reference as if fully set out herein.

69.    The Plaintiff avers that the Defendant, William Lee Smith, assaulted and/or battered the Plaintiff's minor son, DKT, by grabbing him, threatening him with a razor blade, and performing a sexual act to the body of DKT.

70.    The Plaintiff avers that as a proximate result of the Defendant's assault and/or battery, DKT was caused to suffer injuries and to incur the damages as set out in Count I which is adopted by reference as if fully set out herein.

WHEREFORE, the Plaintiff, Constance R. Heath, as natural mother and custodial parent of DKT, a minor, claims compensatory and punitive damages from the Defendant, William Lee Smith, because of the wilfull and malicious nature of the Defendant's act in an amount in excess of the judicial requirements of this Court as determined by a struck jury plus costs and attorney fees and any other relief as this Court may deem just and equitable.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY OF THIS CAUSE.

Ronald R. Crook (CR0004)
Attorney for Plaintiff
SMITH & ALSPAUGH, P.C.
505 20th Street North
Suite 1100, Financial Center
Birmingham, AL 35203
(205) 324-8910

Plaintiff's Address:

Constance R. Heath
800 Cedrum Road
Carbon Hill, AL 35549

Defendants' Addresses:

## Please Serve the Defendants by Certified Mail

Walker County Board of Commissioners
c/o Bruce Hamrick
P.O. Box 1447
Jasper, Alabama 35502-1447

Walker County, Alabama
c/o Jill Farris
County Administrator
P.O. Box 1447
Jasper, Alabama 35502-1447

Walker County Jail
c/o Trent McCluskey
Jail Administrator
2001 2nd Avenue
Jasper, Alabama 35501

Walker County Sheriff's Department
c/o Sheriff John Mark Tirey
2001 2nd Avenue
Jasper, Alabama 35501

Sheriff John Mark Tirey
Walker County Sheriff's Department
2001 2nd Avenue
Jasper, Alabama 35501

Trent McCluskey
Jail Administrator
Walker County Sheriff's Department
2001 2nd Avenue
Jasper, Alabama 35501

William Lee Smith
c/o Trent McCluskey
Jail Administrator
Walker County Sheriff's Department
2001 2nd Avenue
Jasper, Alabama 35501

Dual Tubbs
P.O. Box 1447
Jasper, Alabama 35002-1447

Larry Farris
P.O. Box 1447
Jasper, Alabama 35002-1447

Bruce Hamrick
P.O. Box 1447
Jasper, Alabama 35002-1447

Ben Huggins
P.O. Box 1447
Jasper, Alabama 35002-1447

Randy Bridges
P.O. Box 1447
Jasper, Alabama 35002-1447

# EXHIBIT

# A

IN THE DISTRICT COURT OF THE UNITED STATES
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

RANDY TERRELL, etc., et al.      )
                                 )
        Plaintiffs,              )
                                 )
            v.                   )      Civil Action No. 93 B 2690 J
                                 )
TOMMY HERRING, etc., et al.      )
                                 )
        Defendants.              )

PROPOSED CONSENT ORDER

Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, GA  30303
(404) 688-1202

Attorneys for Plaintiffs

DARYL MASTERS
Webb & Eley, P.C.
166 Commerce Street
Suite 300
Montgomery, AL  36101
(205) 262-1850

Attorney for Defendants

# TABLE OF CONTENTS

I.   DEFINITIONS . . . . . . . . . 1

II.  BACKGROUND . . . . . . . . . 2

III. GENERAL PROVISIONS . . . . . . . . 4

IV.  SUBSTANTIVE PROVISIONS . . . . . . . 4

　A.  NEW JAIL . . . . . . . . 4

　B.  POPULATION . . . . . . . . 5

　C.  POLICIES AND PROCEDURES . . . . . 5

　D.  EXERCISE, RECREATION, AND PROGRAMS . . . 7

　E.  SECURITY AND CONTROL . . . . . 8

　F.  CLASSIFICATION . . . . . . 9

　G.  STAFFING/TRAINING . . . . . . 9

　H.  MEDICAL, DENTAL, AND MENTAL HEALTH CARE . . 11

　I.  DISCIPLINARY PROCEDURES . . . . . 15

　J.  SANITATION AND MAINTENANCE . . . . 16

　K.  HYGIENE . . . . . . . . 17

　L.  SPECIAL NEEDS MANAGEMENT . . . . 18

　　1.  Suicide and Mental Illness . . . 18

　　2.  Pregnancy . . . . . . 19

　　3.  Intoxication . . . . . . 19

　M.  INMATE COMMUNICATIONS . . . . . 19

　N.  ACCESS TO COURTS . . . . . . 19

　O.  FOOD SERVICE . . . . . . 21

　P.  FIRE SAFETY . . . . . . 21

　Q.  GRIEVANCE PROCEDURE . . . . . 22

V.   COMPLIANCE . . . . . . . . 22

VI.  JURISDICTION . . . . . . . . 23

VII.   NOTICE    .      .       .        .        .        .       .       .       .      .

VIII. DISPUTE RESOLUTION .        .        .       .       .       .      .    24

IX.    ATTORNEYS' FEES       .        .        .       .       .      .    25
                                                               .      .    25

APPENDICES

A.    Intake Health Screening Form

B.    Requirements for a Protrusion Free Cell ___

C.    Required Contents of Jail Law Library

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

RANDY TERRELL, etc., et al.,      )
                                  )
     Plaintiffs,                  )
                                  )
          v.                      )          Civil Action No. 93-B-2690-J
                                  )
TOMMY HERRING, etc., et al.,      )
                                  )
     Defendants.                  )
                                  )

## CONSENT ORDER

### I. DEFINITIONS

1.  The terms "plaintiffs" and "inmates" refer to all in-
mates who are now or will be in the future incarcerated in the
present or future Walker County Jail.

2.  The term "defendants" refers to Walker County, Alabama,
Joseph Kimbrell, Chairman of the Walker County, Alabama Commis-
sion, Horace Ivey, Clyde Clark, Joseph Love and W.W. Henderson,
Commissioners of Walker County, Alabama, Joe B. Robertson, Sher-
iff of Walker County, Alabama, and the Chief Jailer of Walker
County, Alabama.

3.  The term "existing jail" refers to the jail located in
the annex of the courthouse of Walker County, in Jasper, Alabama.

4.  The term "new jail" refers to a jail to be constructed
in Walker County, Alabama.

5.  The term "jail" refers to the existing jail and the new
jail.

1

6.  The term "side cell" refers to any cell within the existing jail that is set apart from the four main cell block areas of the jail.  It includes what are commonly referred to as "sidecells", "padded cells", "holding cells", and "the drunk tank," although the latter three terms may be used separately in this Consent Decree where so noted.  All inmates not housed in side cells are housed in one of the four "main cell blocks."

7.  The term "officer" refers to any member of the jail staff, exclusive of kitchen staff, who is hired by Walker County, Alabama, and charged with the duties of those persons commonly referred to as jailers, guards, detention officers or correctional officers.

8.  The term "licensed health care practitioner" refers to an emergency medical technician, licensed practical nurse, registered nurse, or medical doctor.

## II. BACKGROUND

9.  This settlement arises out of a class action lawsuit concerning the conditions of confinement at the existing Walker County Jail.

10.  The original plaintiffs in this action, Randy Terrell, Scott McDonald, Billy Tucker, Kenneth Cook, Randy Busby and Benjamin Berry, filed their complaint on or about December 23, 1993, against the above named defendants and Tommy Herring, Commissioner of the Alabama Department of Corrections in their official capacities.

2

11.  On April 8, 1994, the United States District Court for the Northern District of Alabama, Jasper Division, entered an order in this case certifying a plaintiff class consisting of "all prisoners who are now or in the future will be confined in the Walker County Jail in Jasper, Alabama."

12.  The parties to this Consent Decree have attempted, with assistance of mediation, to resolve this case without litigation. After discussions between the parties, this Consent Decree was agreed upon as a resolution of the plaintiffs' requests for injunctive and declaratory relief.

13.  It is understood by the parties to this Consent Decree that this is a settlement of a disputed claim.  This compromise is not to be construed as an admission of liability on behalf of the defendants or an adjudication of the allegations contained in the plaintiffs' Complaint.  Since no adjudication of the allegations has been held, the parties, by entering this settlement, waive their right to challenge the factual basis for the provisions in this settlement.  Defendants deny liability and intend merely to avoid further litigation by entering into this agreement.

14.  Only plaintiffs and defendants named in paragraphs one and two are parties to this Consent Decree.  Claims involving defendant Tommy Herring, in his official capacity, and the Alabama Department of Corrections remain unresolved.

3

## III. GENERAL PROVISIONS

15.   Policies, practices, procedures, services and privile
es discussed herein apply to both the existing jail and the new
jail.

16.   Unless otherwise stipulated, every provision of this
Consent Decree shall take effect on the date of the entry of th
Consent Decree.


## IV. SUBSTANTIVE PROVISIONS

A. NEW JAIL

17.   The defendants shall forthwith formally petition thei
state legislative delegation to establish a method by which
defendants may secure funding for the building and operation of
new jail facility.

18.   Defendants shall undertake and complete construction
a new jail facility in Walker County within two years after fin
approval of funding for a new jail facility.   The term "final
approval" refers to the consummation of the procedure or method
of approval the aforementioned legislative delegation adopts.

19.   The parties agree that if the defendants do not begin
construction of the new jail within six (6) months of April 1,
1995, the plaintiffs may reopen this case and seek additional
relief.

20.   Defendants shall construct any new jail facility in
Walker County in accordance with either current American Correc-
tional Association Standards for Adult Local Detention Facilitie

4

or current Alabama Sheriffs' Association Jail Standards. Where particular standards are enumerated in one of the aforementioned sets of Standards and not in the other, defendants shall comply with the enumerated standard.

B. POPULATION

21.  Defendants shall reduce the population of the existing jail to no more than 59 people within 60 days of the entry of this Consent Decree. From that date forward, each prisoner in the existing jail shall be provided with at least 39 square feet of space, exclusive of the space with which each prisoner shall be provided in the exercise facility discussed in ¶ 26 herein, and exclusive of the hallway space to which side cell inmates shall have access pursuant to ¶ 28 herein. In no event shall an inmate be forced to sleep on the jail floor or upon mattresses placed on the jail floor. Nor shall any inmate be required to sleep in any dayroom area. The dayrooms in the jail shall be used exclusively as dayrooms.

22.  Defendants shall establish, implement and, whenever deemed appropriate by the Courts, make available and utilize alternative sentencing programs for both pretrial and sentenced inmates.

C.   POLICIES AND PROCEDURES

23.  Defendants shall implement policies and procedures which, at a minimum, cover each provision listed under substantive provisions of this Consent Decree and conform to all federal, state, and local laws and standards.

5

24. No later than February 13, 1995, defendants shall reduce the rules and regulations of the Walker County Jail to writing and place these rules and regulations in an inmate handbook to be distributed to all inmates upon their arrival at the jail. Defendants shall also make available an audio tape of all information included in the handbook for review by inmates who are unable to read. In addition to informing inmates about the rules and regulations of the jail, the handbook shall also set forth the policies and procedures of the jail, including, at a minimum, explanations of the rotating intercom system, disciplinary procedures, grievance procedures, the procedures for securing routine and emergency medical/dental/mental health care, the process for obtaining bond, and a description of criminal justice procedures and schedules in Walker County. The handbook shall also state that the jail is being operated pursuant to a Consent Decree and shall indicate that copies of the Consent Decree are available in the law library.

25. Defendants shall reduce the policies and procedures for the operation of the Walker County Jail to writing on or before February 13, 1995. Said writing shall take the form of a policy and procedure manual. The policy and procedure manual shall set forth in detail all aspects of the jail's operations and all substantive areas covered in this Consent Decree, including, but not limited to: routine and emergency medical, dental and mental health care procedures for inmates; security procedures; surveillance and key control procedures; booking procedure; dispatcher

6

duties; classification procedures; inmate rules and regulations;
inmate rights and responsibilities; fire safety policy; fire and
emergency procedures; disciplinary procedures; grievance proce-
dure; the contents of the inmate handbook; training requirements
for staff; sanitation and maintenance policies; inmate visitatio
policy; policies regarding inmate mail and telephone use; policy
regarding inmate access to the law library and to attorneys;
exercise and recreation policy; food service procedures; policie
and procedures involving inmate provisions, such as clothing,
bedding, laundry, hygiene items, and the inmate canteen; and
policies regarding special needs inmates, such as suicidal,
mentally ill, intoxicated, pregnant or sexually assualted in-
mates.

D. EXERCISE, RECREATION, AND PROGRAMS

26.  By March 1, 1995, defendants shall complete construc-
tion of an indoor-outdoor exercise facility encompassing the
sallyport area of the existing jail and the adjoining outside
sidewalk area.  Immediately thereafter, defendants shall give
access to this area to all inmates at least one hour each day fo
at least four days each week unless legitimate penological inter
est otherwise dictate.  Defendants shall make all reasonable
efforts to limit the number of inmates utilizing this facility t
no more than 15 at any one time.

27.  Upon completion and occupation of the new jail, defen-
dants shall permit inmates to have access to an outdoor exercise
facility one hour each day for at least four days each week.

7

28.    Defendants shall continue to allow all inmates housed in the side cells of the existing jail to have access to the side cell hallway at least one hour per day unless legitimate penological interests otherwise dictate.

29.    Defendants shall continue to permit all inmates housed in the main cell blocks to have the freedom to move between their cells and the dayrooms between 5:00 a.m. and 8:00 p.m. each day, exclusive of meal times, unless legitimate penological interests otherwise dictate.

30.    Defendants shall purchase and install one television set per floor, to be acquired as funds become available from inmate canteen profits.

31.    Defendants shall make available to inmates at the jail a professionally monitored drug program within 60 days of the entry of this Consent Decree.

E. SECURITY AND CONTROL

32.    Defendants shall continue to patrol all areas of the jail on an irregular basis at least once each half-hour.  The patrols shall include direct visual inspection of every cell.

33.    Defendants shall install a "rotating" intercom system in the jail by February 1, 1995, by which each floor of the jail may be monitored and which all inmates in all areas of the jail, including sidecell areas, may use to contact the dispatcher or other officers.

8

F.    CLASSIFICATION

34.    Defendants shall continue to maintain a classification procedure which insures the safety of inmates at the jail. The classification procedure shall continue to make provisions for housing and treatment of special management inmates such as suicidal, intoxicated, mentally ill and other inmates presenting special needs or risks. Defendants shall set forth said classification procedure in the policy and procedure manual described herein at ¶ 25.

35.    Juveniles shall continue not to be housed at the Jail. Persons under eighteen (18) years of age who are charged or convicted as adults shall be separated from other inmates when their age or physical immaturity exposes them to risk of harm.

36.    Inmates placed in the side cells, on suicide watch, or otherwise in segregated confinement shall be accorded the same rights and privileges as inmates in general population, unless penological interests otherwise dictate.

G.    STAFFING/TRAINING

37.    To ensure the security of the Jail, the safety of the inmates, and inmates' access to staff, programs and services, the jail shall be staffed with a sufficient number of officers. Sufficient staff shall be hired and trained such that the required staffing levels can be maintained even during periods of staff illness and vacation.

38.    Defendants shall hire two additional jail officers by March 1, 1995 and at least one additional jail officer within 30

9

days of the date of final approval of the funding for the new jail. After March 1, 1995, the number of jail officers employed by defendants, exclusive of kitchen staff, shall not fall below sixteen (16). In the event that funding for the new jail is approved, as discussed in ¶¶ 17-20, said number of officers shall not fall below seventeen (17). After March 1, 1995, there shall be not less than three (3) officers assigned per shift, exclusive of the Chief Jailer. At least one, and preferably two, officers per shift shall always be free to leave the control and booking rooms in order to conduct patrols and respond to emergency situations and other calls for attention from inmates.

39. Within 18 months of the date of the entry of this Consent Decree, all new members of the jail staff and all current members of the jail staff who have not undergone correctional training in an accredited program shall complete at least 80 hours of formal training in jail operations in an accredited program. Thereafter, all trained members of the jail staff shall receive at least 12 hours each year of formal training on a continuing education basis. Additionally, all staff members shall continue to receive on-the-job training concerning the operation, policies and procedures of the jail.

40. Training shall, at a minimum, include:

a. training in all substantive areas covered by this Consent Decree, including but not limited to: completion of the medical screening form discussed in ¶ 41; recognition, during intake medical screening, of symptoms or conditions

10

listed on the medical screening form which indicate that the
inmate being screened requires medical attention; methods or
procedures for obtaining medical care for inmates; suicide
detection and prevention; mental health and drug- and alco-
hol-related emergencies; security procedures; first aid and
cardiopulminary resuscitation, classification of inmates;
disciplining of inmates; supervision of inmates; use of
force; use of chemical agents; inmate rules and regulations;
rights and responsibilities of inmates; fire and emergency
procedures; key controls; and basic counseling techniques;
and

b. training regarding implementation of this Consent
Decree and the policy and procedure manual described in ¶
25.

H.    MEDICAL, DENTAL, AND MENTAL HEALTH CARE

41.  No later than January 16, 1995, defendants shall uti-
lize and complete for each inmate at the time he or she is booked
a medical screening form.  The parties agree that said screening
form will contain, at a minimum, the information and items encom-
passed within the medical screening form attached hereto as
Exhibit A, and will direct all officers conducting medical
screening to observe the inmate being questioned.  Defendants
shall review this form annually and update it as necessary with
the advice of a physician.

42.  Inmates appearing to be suffering from serious mental
illness including suicidal tendencies or any symptoms associated

11

therewith shall continue to be immediately directed to the proper mental health authority for diagnosis and treatment. Such treatment shall continue regularly as is necessary and appropriate.

43. All jail officers shall be trained to conduct health intake screening. Such screening shall consist of: filling out and completing the medical screening form discussed in ¶ 41; attempting to recognize, during the course of screening, symptoms or conditions listed on the medical screening form which indicate that the inmate being screened requires medical attention or mental health attention; and obtaining, pursuant to the directions contained in the medical screening form, medical or mental health care for inmates immediately following the screening.

44. Where, during health screening intake, an inmate reveals any non-emergency health condition that requires the attention of medical, dental or mental health personnel, a licensed health care practitioner shall review that inmate's health screening during the next scheduled sick-call following the preliminary screening, and if the licensed health care practitioner deems it necessary, he or she shall promptly conduct an examination of that inmate.

45. Defendants shall provide that a licensed health care practitioner hold sick call three times a week at the jail. Said sick call shall be available to all inmates at the jail every time the licensed health care professional conducts sick call. Routine and emergency medical care shall be made available as otherwise needed.

12

46.   A jail staff member shall not deprive any inmate of an opportunity to visit with the licensed health care practitioner conducting sick call.  Nor shall any non-medical personnel have the authority to deny any request for medical, dental or mental health care.

47.   If the jail's licensed health care practitioner recommends an inmate for further treatment or review, defendants shall promptly arrange for such treatment and shall promptly transport the inmate to obtain such treatment.  Defendants shall honor any and all medical, dental, and mental health care appointments arranged or scheduled by the jail's licensed health care practitioner.  Additionally, if, during the period of his or her incarceration, an inmate is treated at any medical, dental or mental health facility outside the jail (including any hospital, after hours clinic, or doctor's office) and the attending licensed health care practitioner recommends a follow-up visit or visits for said inmate, defendants shall abide by the terms of such recommendation.

48.   When the licensed health care practitioner visiting the jail so requests, defendants shall provide a private examination facility, including an examination table, and handwashing facilities located nearby.

49.   Defendants shall provide dental care to inmates upon the recommendation of one of the jail's licensed health care practitioners.  Where otherwise necessary, and in all emergency situations, defendants shall provide dental care to inmates at

13

the jail, even if one of the jail's licensed health care practitioners has not yet examined an inmate complaining of dental problems. Dental care may include extractions, but shall not be limited to them.

50. Defendants shall make mental health care routinely available to any inmate in the jail in need of such care. Defendants shall provide mental health care to inmates upon the recommendation of one of the jail's licensed health care practitioners. Where otherwise necessary, and in all emergency situations, defendants shall provide mental health care notwithstanding the availability of one of the jail's licensed health care practitioners to make a recommendation for treatment.

51. Defendants shall continue to provide emergency medical care at the jail 24 hours per day, seven days per week.

52. In the event an inmate undergoes emergency room treatment, outpatient care or treatment in a doctor's office or hospital, the jail staff member or deputy responsible for taking the inmate to receive medical, mental health or dental care shall obtain written instructions from the treating licensed medical care practitioner or emergency room personnel to be given to the jail's qualified health care personnel and to be placed in the inmate's medical file.

53. Defendants shall continue to distribute medication according to the orders of the physician prescribing it. In no event shall a medication prescription be discontinued, or prescribed medication withheld, unless the physician who prescribed

14

the medication so orders.  Defendants shall continue to keep all drugs in a locked place and shall continue to maintain records on the administration of drugs.  Inmates and trustees shall continue to be disallowed to administer medication.

54.  Defendants shall continue to maintain a confidential medical section in each inmate's personnel file.  Said medical section shall include the health intake screening form, any physical examinations conducted on the inmate, medication records, sick call requests and visits, referrals by the licensed health care practitioner to other medical, dental or mental health care professionals and outpatient visits to such professionals, and emergency room referrals, treatment and directions for any follow-up.

55.  A first aid kit shall be available in the jail.

I.  DISCIPLINARY PROCEDURES

56.  Defendants shall establish and implement disciplinary procedures that satisfy all constitutional standards.  Said procedures shall include but not be limited to provisions governing:  the preparation of disciplinary reports by jail officers; the investigation of charged violations; the prompt and timely service upon the accused inmate of adequate written notice of th charges against said inmate; hearings before an impartial hearin officer or officers; written statements of findings by the hearing officer or officers; the full range and nature of possible sanctions; and appeals to an impartial appellate authority from adverse decisions rendered against inmates.

15

J.    SANITATION AND MAINTENANCE

57.  Defendants shall complete painting all parts of the interior of the jail on or before February 1, 1995, and, thereafter, shall paint every portion of the interior of the jail at least once every two years.

58.  Defendants shall continue to employ a licensed pest control company to eradicate pests in all areas of the jail at least once monthly, and, as needed, more often.

59.  Jail staff shall be responsible for ensuring that the jail is properly cleaned.  Defendants shall, no less than once a week, provide hand brushes and abrasive cleansers to inmates, as well as other cleaning materials, including mops, brooms, disinfectant and bleach water, in order that inmates may effectively clean their living areas.  All cleaning done by inmates with the aforementioned materials shall continue to be done only under direct staff supervision.

60.  Defendants shall continue removing garbage from all areas of the jail, including side cells, at least once each day, and shall refrain from only using plastic garbage bags for trash storage.  Defendants shall place a garbage container within the reach of inmates housed in the side cells.

61.  Defendants shall ensure that all plumbing within the jail is in efficient working order within 90 days of the date of the entry of this Consent Decree.  There shall be two operative showers available on the main cell block of each floor of the existing jail.  All sinks and all commodes in all cells and all

16

dayrooms shall function properly.  Hot and cold water shall be
available to all inmates at all times.  In the event that any
sink, commode or shower fails to function properly, defendants
shall either repair, or place a repair order for, the facility in
question the same day they become aware of said problem.

62.  Defendants shall install additional lighting fixtures
which may be controlled by the inmates at least 16 hours each
day, in each cell, within 90 days from the entry of this decree.
Defendants shall continue to ensure that lighting in the jail is
adequate.

63.  Defendants shall improve the ventilation system in the
jail by increasing the size of and/or the speed of, and thus the
air flow produced by, the fans in the current system. Defendants
shall, as needed, provide box fans in the catwalk areas of each
floor so as to improve air circulation within the jail.  All fans
shall be controlled by members of the jail staff only.

64.  Defendants shall ensure that all accessible ventilation
screens are cleaned at least twice a year so as to permit maximum
air flow throughout the jail.

K.    HYGIENE

65.  Defendants shall provide personal hygiene items to all
inmates, effective within 30 days of the date of the entry of
this Consent Decree.  Such items will include soap or cleansing
compound, a towel, sheets, a blanket, a razor, sanitary items for
females, a toothbrush, and toothpaste.

17

66. At the time the one hundred (100) new mattresses currently on order by defendants are received, defendants shall place them in use. All mattresses shall be sanitized and, if necessary, repaired between users.

67. All eating and drinking utensils shall be gathered and sanitized after every meal.

68. Inmates shall be permitted to exchange worn uniforms for clean uniforms at least three (3) times a week. Defendants shall continue to launder all inmate clothing.

L.    SPECIAL NEEDS MANAGEMENT

1. Suicide and Mental Illness

69. Any inmate whom any jail officer or licensed health care practitioner suspects of being suicidal shall be promptly evaluated by a qualified mental health care professional. Defendants shall refer all inmates on suicide watch to mental health care providers or to facilities providing appropriate treatment and shall provide routine care and counseling to suicidal and potentially suicidal inmates.

70. Defendants shall maintain a suicide watch on all inmates diagnosed as or suspected of being suicidal.

71. Inmates on suicide watch shall be afforded the same rights and privileges as side cell inmates, unless legitimate penological interests otherwise dictate.

72. To prevent suicides and suicide attempts, defendants shall ensure that one of the two holding cells, formerly known as "padded cells," is suicide-resistant. Said cells shall not

18

contain any protrusions, accessible light fixtures, electrical outlets or any other items by which an inmate may effectuate a suicide. The cell shall be in substantial compliance with Exhibit B attached hereto.

### 2. Pregnancy

73. Defendants shall provide pregnant prisoners with prenatal care, including medical examinations, medically necessary diets, and counseling.

### 3. Intoxication

74. Intoxicated persons shall be checked every fifteen (15 minutes by jailers. All inmates intoxicated upon admission to the jail shall be kept segregated from other inmates until they are sober.

### M.    INMATE COMMUNICATIONS

75. All inmates shall be provided rules regarding mail, visits, and telephone. The rules shall clearly state which items an inmate may send or receive through mail or visits.

76. After February 1, 1995, defendants shall increase the length of the inmate visitation period from one (1) hour per week to two (2) hours a week.

### N.    ACCESS TO COURTS

77. Defendants shall ensure that all inmates have access to courts by providing inmates with access to a law library; privileged communications with courts, public officials and attorneys and their representatives; and protection from retaliation for exercising these rights.

19

78.  Before March 1, 1995, defendants shall purchase the materials listed in Exhibit C and establish a law library within the jail.  Defendants shall promptly provide inmates with materials from this jail law library upon request.  Defendants also shall permit inmates access to additional library materials upon request, effective immediately upon the entry of this Consent Decree.

79.  Defendants shall continue to provide a space in which inmates may confer confidentially with their attorneys.  Defendants shall continue not to listen to or record attorney-inmate conversations.

80.  Defendants shall continue to provide inmates access to uncensored telephones and mail services for the conduct of legal matters.  Outgoing mail to courts, attorneys or their representatives, and public officials shall be sent sealed.  Incoming mail from courts, attorneys or their representatives, and public officials may continue to be opened only in the presence of the inmate-addressee and, then, only to search for contraband.  Under no circumstances shall the contents be read or copied.

81.  Defendants shall provide indigent inmates access to supplies, equipment and services enabling them to prepare legal documents, including, pens, paper, envelopes, notary services, stamps, carbon paper or access to a copying machine.  Defendants shall provide inmates with sufficient supplies, equipment and services to satisfy court procedural requirements and to permit an inmate to retain a single copy of documents.

20

O.   FOOD SERVICE

82.   Defendants shall continue to require all inmates and staff assigned to food services to be examined by one of the jail's licensed health care practitioners to ensure that they are free from diseases transmittable through food service.  This examination shall be completed before assignment to food services and at least bi-annually thereafter.

83.   Defendants shall continue to require food handlers to wear clean clothing, gloves and hair nets or caps.  Food handlers shall be free from open and infected wounds.  Toilet and handwashing facilities shall continue to be located in close proximity to all food preparation areas.

84.   The jail's cook shall, in advance, prepare weekly menus to be posted in the kitchen and kept on file for future refer-ence.  Said menus shall meet all current nutritional standards for a balanced diet and shall continue to require the approval of the Walker County Department of Health.

85.   Defendants shall continue to provide and follow any therapeutic diet prescribed for an inmate by a physician or dentist.

P.   FIRE SAFETY

86.   Defendants shall comply with all standards, regula-tions, orders, and reports issued by the Alabama Fire Marshal.

87.   By February 1, 1995, Defendants shall obtain and uti-lize fire retardant storage boxes for all inmates and replace boxes currently in use.

21

Q.    GRIEVANCE PROCEDURE

88.    Defendants shall implement a grievance procedure that includes:  provisions requiring a written signed response within forty-eight (48) hours of the complaint; an appeal process that allows for appeal to the sheriff or jail administrator; a requirement that grievance forms be made available immediately upo request; a prohibition against staff questioning requests for grievance forms; a prohibition against retaliation for filing grievances; procedures for expediting emergency complaints; procedures for allowing a direct grievance to the chief jailer o sheriff where the inmate fears possible adverse consequences if the nature of the complaint is made known to other officers.

## V. COMPLIANCE

89.    The Court shall, as soon as practicable after the adoption of this Consent Decree, appoint a qualified, neutral individual as a monitor to report on and evaluate the progress o the defendants in complying with each provision of this Order. The Court shall not appoint as monitor any individual who has nc been mutually agreed upon by the parties.  The parties shall submit the name(s) of their proposed monitor(s) to the Court no later than March 1, 1995.  The monitor shall be entitled to a reasonable fee for this work, which shall be taxed as part of th costs to the defendants in this case.

90.    Defendants shall make quarterly reports to the Court c their efforts to comply with this Consent Decree until such time

as the Court deems that its jurisdiction over this dispute is terminated.  These reports shall also be provided to plaintiffs' attorneys, the monitor, and such other parties as the Court may direct.

91.    Defendants shall provide plaintiffs' counsel with access to all documents, records or recordings relating to the implementation of this order.  Counsel for the plaintiffs shall continue to be allowed access to inmates at the Walker County Jail during regular business hours.  Upon reasonable notice to defendants' counsel, counsel for the plaintiffs shall have acces to the jail facility as necessary to address issues affected by this Consent Decree.

## VI. JURISDICTION

92.    This Court has jurisdiction over the subject matter of this action and the parties thereto.

93.    This Court shall retain jurisdiction in this case to ensure that this Consent Decree and all provisions incorporated herein are fully implemented.  Six months after the new jail is occupied, defendants may petition the Court, showing that they are in compliance to end jurisdiction, and, absent an objection by the plaintiffs supported by evidence of non-compliance, and o a finding by the Court of non-compliance, jurisdiction shall end

23

## VII. NOTICE

94.   Defendants shall require strict compliance with this Consent Decree by their respective employees, agencies, assigns, and successors.   Defendants shall immediately explain the terms of this Consent Decree to their agents, servants, representative and employees in any way connected or potentially involved with the jail, including jail staff and Sheriff's deputies, in order to ensure their understanding of the requirements set out herein and the necessity of strict compliance therewith.   All jail staf members and other individuals providing services required by thi Consent Decree shall read this Consent Decree within 30 days of the date of its entry or within 30 days of being hired, whicheve comes later.

95.   Defendants shall provide notice of the terms of·this Consent Decree to all members of the Plaintiff class by posting, within ten (10) days of the signing of this Consent Decree and thereafter as made necessary by the removal or destruction of posted copies.   In the existing jail the Consent Decree shall be posted accordingly:   two (2) copies in the booking room, one cop in each sidecell, and one copy on each main cell block, and five (5) copies in the inmate law library.   In the new jail, the Orde shall be posted accordingly:   one copy in each cell block, one copy in each segregation cell, two (2) copies in any visiting area, and five (5) copies in the inmate law library.   The pages of the copies shall be covered with sheet protectors.   Notices that must be posted due to destruction or removal of the previ-

24

ously posted copies shall be provided to defendants by plaintiffs' counsel.

96.   The inmate handbook shall advise inmates that the jail is being operated under the terms of an Order entered by the United States District Court for the Northern District of Alabama and that, upon request, any inmate will be afforded the opportunity to read a complete copy of the Order.

## VIII. DISPUTE RESOLUTION

97.   If, at any time, plaintiffs believe the defendants to be in violation of any part of this Consent Decree, they shall notify the defendants, in writing, of the alleged violation. The defendants shall have 45 days from the time of written notification to remedy the problem.  Should a problem not be remedied to the satisfaction of all parties within 45 days, the dispute may be presented to the Court for resolution.

## IX. ATTORNEYS' FEES

98.   For the purposes of attorneys' fees and costs, the Plaintiffs shall be considered prevailing parties and shall be entitled to reasonable attorneys' fees and costs.  The parties have previously agreed and settled, separate from this Consent Decree, the total amount due Plaintiffs' attorneys for their actions regarding this case.  If a dispute arises under Section VIII and the dispute is not settled to the satisfaction of the parties within the 45-day period enumerated in Section VIII, and

25

if said dispute is ultimately resolved either by defendants'
voluntary compliance with plaintiffs' demands or by an order fro
the Court in plaintiffs' favor, plaintiffs attorneys shall also
have the right to petition the Court for compliance and monitor-
ing fees and expenses.

The parties hereby consent to the entry of this order this
_____ day of _____, 1994.


SETH ROSENTHAL
~~~~~~~ ~~~~~~~~
83 Poplar Street, N.W.
Atlanta, GA  30303
(404) 688-1202

Attorneys for Plaintiffs


DARYL MASTERS
~~~~ ~ ~~~~, ~.~.
166 Commerce Street
Suite 300
Montgomery, AL 36101-023
(205) 262-1850

Attorney for Defendants


JOE B. ROBERTSON
Sheriff
Walker County


W. W. HENDERSON
Commissioner
Walker County Commission


JOSEPH KIMBRELL
Chairman
Walker County Commission


CLYDE "POLLY" CLARK
Commissioner
Walker County Commission


JOSEPH LOVE
Commissioner
Walker County Commission


HORACE IVEY
Commissioner
Walker County Commission


RANDY HARRISON
Chief Jailer
Walker County Jail


26

The law library to be established at the Walker County Jail shall include:

a. Black's Law Dictionary, published by West, 1979, 5th edition

b. Criminal Procedure in a Nutshell and Civil Procedure in a Nutshell, West, 1980, 3rd edition

c. Fundamentals of Trial Techniques, by Thomas A. Mauet

d. Alabama Criminal Trial Practice, Harrison Co.

e. Alabama Criminal Trial Practice Forms, Harrison Co.

f. Constitutional Rights of the Accused: Pre-Trial Rights, Lawyers Co-op

g. Constitutional Rights of the Accused: Trial Rights, Lawyers Co-op

h. Constitutional Rights of the Accused: Post-Trial Rights, Lawyers Co-op

i. Law of Corrections and Prisoners' Rights in a Nutshell, West, 1983

j. Legal Research, Writing and Analysis, West, 1982.

k. One of the following:

i. How to Find the Law, West, 9th edition, 1983;

ii. Fundamentals of Legal Research, Foundation Press, 3rd edition, 1985;

iii. Legal Research: How to Find and Understand the Law, Nolo Press, 1982;

iv. Introduction to Legal Research, Want Publishing, 1985;

v. The Legal Research Manual, A-R Editions, Inc., 1983.

l. Alabama Rules of Court - State, West Publishing (published annually).

m. Alabama Rules of Court - Federal, West Publishing (published annually).