FILED

2006 Sep-07  AM 09:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

DANIEL KYLE THOMAS,               )
                                  )
    Plaintiff,             )
                                  )               CASE NO. CV-05-J-506-NW
v.                                )
                                  )
WALKER COUNTY BOARD OF            )
COMMISSIONERS, ET. AL.,           )
                                  )
    Defendants.            )

## MEMORANDUM OPINION

Pending before the court is the summary judgment motions of defendant Alvin Collins (doc. 103), defendants Trent McCluskey and John Mark Tirey (doc 106), and defendant Walker County Commission (doc. 108).

## FACTUAL BACKGROUND

On January 25, 2004, Daniel Kyle Thomas, then a sixteen year old male, was arrested and taken into custody. Thomas was originally placed in the Jasper Juvenile Detention Facility, but he was transferred to the Walker County Jail pursuant to an order entered by a Circuit Court Judge of Walker County (doc. 105, attachment 5). He was booked into the jail on January 30, 2004 (doc. 110, exhibit A). When Thomas arrived at the jail, he was housed in the booking area, but he was eventually moved

to cell number 14 in the M-dorm.  (Thomas Depo. at 49).  Thomas was initially

placed alone in cell number 14, but Andrew Lee Smith, an adult inmate and convicted

felon, was placed into the cell with Thomas.[1]  (Thomas Depo. at 55-56).  Thomas

does not recall who placed Smith into the cell with him.  (Thomas Depo. at 56).

Thomas and Smith were together in cell number 14 for two to three days.  (Thomas

Depo. 59).  Because Thomas and Smith were having problems with the sink in cell

number 14, they requested to be moved to a different cell.  (Thomas Depo. at 59, 63).

Defendant Alvin Collins, a jail employee, moved Thomas and Smith into cell number

three, also located in the M-dorm.  (Thomas Depo. at 59).  Thomas states that on

February 9, 2004, Smith threatened him with a metal "shank" and raped him.

(Thomas Depo. at 68).

On March 17, 2005, Constance R. Heath, Thomas's mother, sued on behalf of

Thomas, her minor son.  Heath sued the following entities and individuals: the

Walker County Board of Commissioners (the Board); Walker County, Alabama;

Walker County Jail; Walker County Sheriff's Department; John Mark Tirey, the

Sheriff of Walker County; Lee Andrew Smith; Trent McCluskey, the Walker County

---

[1]Lee Andrew Smith was identified in the complaint as William Lee Smith (doc. 1).  On May 31, 2006, the plaintiff filed an amended complaint to correctly identify the defendant initially identified as William Lee Smith by his correct name, Lee Andrew Smith (doc. 87).

Jail Administrator; Dual Tubbs, a Walker County Commissioner; Larry Farris, a Walker County Commissioner; Bruce Hamrick, a Walker County Commissioner; Ben Huggins, a Walker County Commissioner; and Randy Brides, a Walker County Commissioner.  Heath sued under 42 U.S.C. § 1983 claiming that the defendants' conduct violated rights guaranteed under the Fifth and Fourteenth Amendments. Health also claimed that the defendants failed to comply with the provisions of a consent decree entered in *Terrell v. Herring*, CV 93-B-2690-J, which addressed numerous conditions at the Walker County Jail (doc. 122, exhibit BB).   Heath also asserted state law claims of negligence and outrage.  Lastly, Heath asserted a claim for assault and/or battery against defendant Smith.

On April 7, 2005, all defendants except Smith filed a motion to dismiss (doc. 16) with a supporting memorandum (doc. 17).  Heath filed a brief in opposition (doc. 19) and a response in opposition (doc. 20) to the motion to dismiss the complaint.  On April 29, 2005, Heath filed an amended complaint to add a claim alleging violations of  Eighth Amendment rights (doc. 24).  On May 13, 2005, all defendants except Smith filed a motion to dismiss the first amended complaint (doc. 29).  On June 1, 2005, a hearing was held on the motion to dismiss the complaint and the motion to dismiss the amended complaint.   The court ruled on these motions on June 3, 2005 (doc. 37).  The court dismissed the following claims: all claims against the sheriff's

3

department, Walker County, and the jail; all claims for punitive damages; the state

law claims brought against Tirey and McCluskey in their individual capacity; the

negligent hiring and retention claims brought against the Board; and any claim related

to inadequate funding of the jail brought against the individual commissioners (doc.

37).  The court determined that the following claims were moot: the claims brought

against Tirey and McCluskey in their official capacities, claims against individual

Board commissioners in their official capacities, and all claims alleging violations

under the Fifth Amendment (doc. 37).  The court denied the motion to dismiss the

following claims: § 1983 claims brought against Tirey and McCluskey and the

remaining claims brought against the Board (doc. 37).

On November 17, 2005, Heath amended her complaint to add Collins as a

defendant (doc. 53).  By May 5, 2006, Thomas had reached the age of majority, and

the complaint was amended to substitute Thomas as the named plaintiff in the case

(doc. 78).

On July 24, 2006, Collins filed a motion for summary judgment (doc. 103) with

a supporting brief (doc. 104) and evidentiary materials (doc. 105).  On July 24, 2006,

Tirey and McCluskey filed a motion for summary judgment (doc. 106) with a

supporting brief (doc. 107) and evidentiary materials (doc. 110).  On July 24, 2006,

the Board filed a motion for summary judgment (doc. 108) with a supporting brief

(doc. 109) and evidentiary materials (doc. 110).  Thomas filed a response to the Board's motion for summary judgment (doc. 114) with a supporting brief (doc. 113) and evidentiary materials (doc. 122).  Thomas filed a response to the motion for summary judgment filed by Tirey and McCluskey (doc. 116) with a supporting brief (doc. 115) and evidentiary materials (doc. 122).  Thomas also filed a response to Collins's motion for summary judgment (doc. 119) with a supporting brief (doc. 120) and evidentiary materials (doc. 123).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a genuine issue for trial.  *See* Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## DISCUSSION

### I. Federal 1983 Claims

42 U.S.C. § 1983 prohibits a person, acting under color of state law, from depriving another person of his or her rights secured by the U.S. Constitution.  *See*

42 U.S.C. § 1983.  Section 1983 does not provide a substantive right on its own, but § 1983 provides a remedy for the deprivation of constitutional rights.  *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996).  To prevail on a suit under § 1983, the plaintiff must show both a deprivation of federal rights and that the deprivation was by a person acting under color of state law.  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).  Thomas has sued under 42 U.S.C. § 1983 claiming that the defendants violated the rights guaranteed to him under the Fourteenth Amendment.

### A. The Walker County Board of Commissioners:

"A local government can be directly responsible for a constitutional violation due to its acts or omissions."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1298 (1986)).  *See also Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1428 ("A local government may be held liable under § 1983 for injuries caused by an unconstitutional policy adopted by local lawmakers or by 'those whose edicts or acts may fairly be said to represent official policy' for the local government.") (quoting *Monell v. Dept of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978)).  "A local government, however, will be liable under section 1983 only for acts for which the local government is actually responsible."  *Marsh*, 268 F.3d at 1027 (citing *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998)).  Therefore,

7

"[i]n § 1983 actions, county commissions cannot be held liable under a theory of *respondeat superior*." *Dowdell v. Chapman*, 930 F. Supp. 533, 547 (M.D. Ala. 1996) (citing *Swint v. City of Wadley*, 5 F.3d 1435, 1450 (11th Cir. 1993)).

In Alabama, a county commission possesses certain duties and responsibilities with respect to county jails. *Turquitt*, 137 F.2d at 1289. Under Alabama statute, a county has the responsibility to "maintain a jail." Ala. Code 1975, § 11-14-10. Alabama courts have held that by using the phrase "maintain a jail" in § 11-14-10, the Legislature intended to require that the county commission keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline. *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1990). In *Turquitt*, the Eleventh Circuit described the duties of the county commission as it respects county jails as follows:

> The duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.' *Stark v. Madison County.*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996). The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala. Code §§ 11-14-10, 11-14-13 (1989). In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail. The duty to 'maintain a jail' under § 11-14-10 is merely the duty to keep the 'jail and all equipment therein in a state of repair and to preserve it from failure or decline.' [*Keeton*, 558 So. 2d at 886)].

> The Alabama Code provides for the counties to remain informed about conditions within the jails.  We conclude that these statutes are entirely consistent with the counties' limited role in building and funding the jails and do not imply or impart any control over the jails' operation.

*Turquitt*, 137 F.3d at 1289.  *See also Stark*, 678 So. 2d at 788 ("The duties of [the county] as they relate to the county jail are limited to funding the operation of the jail and to providing facilities to house the jail").  The county commission does not have "responsibility for daily operation of county jails and no authority to dictate how jails are run ..." *Marsh*, 268 F.3d at 1027.  *See also Turquitt*, 137 F.3d at 1289 (holding that Alabama counties do not possess duties with respect to county jails "relate[d] to the daily operation of the jails or to the supervision of inmates") and *Stark*, 678 So. 2d at 788 (holding that a county has no duty "to perform, or to be responsible for, the day-to-day cleaning of the jail" and that the county's duty as it relates to the jail is "to provide adequate facilities and equipment to house the jail and to provide funding for certain aspects of operating the jail.").

The Board argues that summary judgment is due to be granted as to the § 1983 claims asserted against it because there is no evidence that the Board was responsible for any of the alleged violations of Thomas's rights and the evidence establishes that the Board fulfilled its duties to fund, build, and maintain the jail.  Tirey, the Sheriff of Walker County, and McCluskey, the jail administrator, both testified by sworn

9

declaration that the Board provided adequate funding for the hiring and training of jail employees, for maintenance and repairs of the jail facility, and for supplying adequate space to house inmates (doc. 110, exhibits H and I).  Tirey and McCluskey also testified by sworn declaration that at the time of the incident, the Board was providing sufficient funding to staff the jail and to maintain the jail (doc. 110, exhibit H and I).  Hamrick, the Board's chairman, testified by sworn declaration that at the time of the incident, the Board was not aware of any need for additional funding at the jail, but if the Board had been made aware of such a need, it would have provided the funding to remedy any deficiencies at the jail (doc. 110, exhibit J).   In his deposition, Tirey testified that he has never spoken with the Board about problems related to jail overcrowding.  (Tirey Depo. at 107-08).  The Board presented evidence indicating that, at the time of the rape, the jail was not overcrowded, it was not filled to capacity, and it had sufficient space to segregate minor and adult inmates (doc. 110, exhibit H and I).  (McCluskey Depo. at 104).    The Board also presented evidence demonstrating that Thomas was transferred to the jail from the juvenile facility because a circuit court judge ordered that Thomas be tried as an adult (doc. 105, attachment 4).  Thomas testified at his deposition that the intercom system in his cell was working properly at the time of the rape.   (Thomas Depo. at 66, 74).  McCluskey testified by sworn declaration that the intercom system in Thomas's cell

was tested after the incident and it was found to be functioning properly (doc. 110, exhibit H).  In light of this evidence, the Board has established that it fulfilled its duty to fund and maintain the jail facilities.

Thomas has failed to present sufficient evidence to demonstrate that there is a genuine issue of material fact whether the Board met its duty to fund, build and maintain the jail.  Thomas has not presented any evidence demonstrating that Smith, a convicted adult inmate, was placed in a cell with Thomas because there was insufficient space in the jail to house minors separately from adult inmates.  Thomas has not presented any evidence showing that he was transferred from the juvenile facility to the jail because of insufficient space at the juvenile facility.  Lastly, Thomas has failed to present any evidence indicating that a deficiency related to the jail facilities caused the harms alleged by Thomas.

Thomas argues that there is a genuine issue of material fact as to whether the Board fulfilled its duties related to the jail because the evidence indicates that the Board failed to implement the *Terrell* consent decree (doc. 122, exhibit BB). Specifically, Thomas argues that the evidence presented shows that the Board failed to implement policies and procedures for preventing the housing of minors with adult inmates and that this was a violation of the consent decree.  The *Terrell* consent decree contains a provision requiring that "persons under eighteen (18) years of age

11

who are charged or convicted as adults, shall be separated from other inmates when their age or physical immaturity exposes them to risk of harm" (doc. 122, exhibit BB). Ala. Code 1975, § 11-14-10 states that the county has the duty to fund and maintain the jail, and the evidence demonstrates that the Board fulfilled its duties under this statute.  Although housing Smith and Thomas in a cell together *may* have been a violation of the *Terrell* consent decree, the Board does not have the authority to dictate how the jail is operated.  *See Raspberry v. Johnson*, 88 F. Supp.2d 1319, 1325 (M.D. Ala. 2000) ("[T]he court notes that 'local governments can never be liable under § 1983 for acts of those whom the local government has no authority to control. A local government "must have power in an area in order to be held liable for an official's acts in that area."'") (quoting *Turquitt*, 137 F.3d at 1292) (quoting in turn *McMillian v. Johnson*, 88 F.3d 1573, 577 (11th Cir. 1996)).  Although Thomas asserts that failing to keep him segregated from the adult inmates amounts to a violation of the *Terrell* consent decree, this allegation is unrelated to the Board's duties to fund and maintain the jail given that the Board has no responsibility related to the day-to-day operations of the jail.

The evidence presented by the Board demonstrates that it fulfilled its duty to fund, build, and maintain the jail.  The plaintiff has not offered any evidence to create a genuine issue of material fact as to whether that the board failed to fulfill its duty

to fund, build, and maintain the jail.  Therefore, the Board's motion for summary judgment shall be GRANTED.

## B. Tirey and McCluskey

Thomas alleges that Tirey and McCluskey violated his rights as guaranteed by the Fourteenth Amendment.[2]  Tirey and McCluskey argue summary judgment should be granted because they are entitled to qualified immunity.

To determine whether an official is entitled to qualified immunity, the initial inquiry is whether a constitutional right would have been violated on the facts alleged.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). *See also Purcell v. Toombs County, Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005) (stating that the court must first determine "whether the summary judgment evidence, viewed in the light most favorable to [the plaintiff], shows a violation of a constitutional right").  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*,

---

[2]At the time of the alleged rape, Thomas was a pretrial detainee.  "The Eighth Amendment applies to convicted inmates.  A pretrial detainee's 'constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment.'  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 n. 4 (11th Cir. 1995)."  *Purcell v. Toombs County, Ga.*, 400 F.3d 1313, 1318 n. 13 (11th Cir. 2005).  However, "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments."  *Marsh v. Butler Cty.*, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001).

13

533 U.S. at 201.  However, if a constitutional violation could be made out, the next step is to determine whether that right was clearly established.  *Id.*  Tirey and McCluskey argue that they are entitled to summary judgment because Thomas has not established that they violated his constitutional rights.  Tirey and McCluskey also argue that even if Thomas has made out a constitutional violation, he has failed to establish that the right was clearly established.

Tirey and McCluskey argue that Thomas has failed to establish that his constitutional rights were violated under the facts alleged.  *See Marsh*, 268 F.3d at 1028 ("In the qualified immunity analysis, we generally first determine whether a plaintiff has stated a claim for a constitutional violation at all.").  Although the Constitution does not require that prisons be comfortable, it is well settled that the treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994).  Prison officials have a duty to provide humane conditions of confinement and must "take reasonable measures to guarantee the safety of inmates."  *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104, S.Ct. 3194, 3200 (1984).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  To show a violation of Thomas's Fourteenth Amendment rights, he "must

14

'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Purcell*, 400 F.3d at 1319  (quoting *Hale*, 50 F.3d at 1582).

Tirey and McCluskey argue that there is insufficient evidence showing that the rape occurred under conditions posing a substantial risk of serious harm. *See Cottone v. Jenne* 326 F.3d 1352, 1358 (11th Cir. 2003) ("such risk must be an objectively substantial risk of serious harm to prisoners").  "On substantial risk of serious harm, '[t]his objective standard "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...,'" but must be balanced against competing penological goals.'" *Purcell*, 400 F.3d at 1321 (citations omitted).  An excessive risk of inmate-on-inmate violence creates a substantial risk of serious harm. *Purcell,* 400 F.3d at 1320.   "'[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable.'" *Purcell*, 400 F.3d at 1320.

In *Marsh*, the Eleventh Circuit Court of Appeals addressed whether the facts alleged in the complaint were sufficient to establish a substantial risk of inmate-on-inmate violence.  The conditions alleged included the following:

> 1) there was no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults, or inmates with mental disorders from those without mental disorders, 2)

15

at times the Jail housed more prisoners than the cells could accommodate, 3) the Jail was routinely understaffed, 4) no head counts of prisoners were made to make sure they were all accounted for, 5) locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day, 6) homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the Jail, 7) no lock down of prisoners in their cells occurred at any point during the day or night, 8) cells were not visually inspected, 9) no jailer was assigned to maintain prisoners' security on the second floor where most of the inmates were housed, 10) the Jail was not operated in accordance with written policies, 11) inmates were not screened for mental health, medical conditions or conflicts with other prisoners before entering the Jail, and 12) prisoners were not disciplined or segregated when they attempted to escape, threatened jailers, destroyed property or assaulted other inmates.

*Marsh*, 268 F.3d at 1029.  The court held that, taken as a whole, these alleged conditions created an objectively substantial risk of serious harm.  *Id*.

Tirey and McCluskey argue that the evidence that a "mistake in cell assignment was made" resulting in Smith and Thomas being placed in a cell together does not amount to sufficient evidence that Thomas was put at a substantial risk of serious harm.  Thomas argues that the failure of jail employees to segregate Thomas, a minor pre-trial detainee, and Smith, a convicted adult inmate, created a substantial risk of serious harm.  The evidence demonstrates that the policy at the jail was to segregate minors from the adult inmates.  (McCluskey Depo. at 9-10, Tirey Depo. at 51-52).  Jail employees testified during depositions that they understood that the policy at the jail was to segregate minors from adult inmates.  (Collins Depo. at 42; Robinson

Depo. at 21; Woodley Depo. at 17-18; Lockhart Depo. at 11; and Steadman Depo. at 29).  Like the conditions of the jail in *Marsh*, when Thomas and Smith were placed in a cell together, jail officials failed to segregate a minor pre-trial detainee from a convicted adult inmate. *Marsh*, 268 F.3d at 1029.  In addition, similar to the conditions of the jail in *Marsh*, the jail was not being operated in accordance with jail policy--a policy designed to protect minors.  *Id*.  Although the conditions may not be as severe as the conditions described in *Marsh*, there is evidence indicating that jail policies and procedures that were put in place to protect minors were not followed.  Thus, the evidence does not support Tirey's and McCluskey's contention that it was a simple "mistake in cell assignment."  Rather, Thomas has presented sufficient evidence from which a jury could find that being housed with a convicted adult inmate was a jail condition presenting a substantial risk of serious harm.

Although Thomas has presented evidence establishing a genuine issue of material fact as to whether Thomas was jailed under conditions presenting a substantial risk of serious harm, he must also present sufficient evidence demonstrating that Tirey and McCluskey acted with deliberate indifference to that risk.  Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other," and "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the

equivalent of recklessly disregarding that risk." *Farmer*, 511 U. S. at 836. Deliberate indifference requires a showing that an official was subjectively aware of a substantial risk of serious harm. *Id*. at 829. Specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Thomas claims that Tirey and McCluskey were deliberately indifferent because they failed to take steps to protect him from the assault. There is no clear evidence indicating how Thomas and Smith were placed into a cell together. The plaintiff does not dispute that neither Tirey nor McCluskey placed Thomas and Smith in the cell together. McCluskey testified at his deposition that, had he seen Thomas and Smith together, he would have immediately separated the two inmates. (McCluskey Depo. at 28). There is no evidence demonstrating that Tirey was involved in the process of making cell assignments. McCluskey testified that the last time he saw Thomas before the rape was on the afternoon of Friday, February 6, 2004, before he left the jail for the weekend (McCluskey Depo. at 27-29). McCluskey also testified that Thomas was alone in his cell at that time. (McCluskey Depo. at 27-29). The

evidence indicates that McCluskey took steps to ensure that Thomas was segregated from the adult inmates.  For example, McCluskey trained employees to keep minors separated from adult inmates and specifically ordered that Thomas was to be housed alone. (McCluskey Depo. at 8-9).

Thomas has not presented any evidence to show that either Tirey or McCluskey made the decision to place Thomas and Smith in a cell together. In addition, Thomas has not presented any evidence to show that McCluskey or Tirey ever saw him in the cell with Smith, and Thomas has not alleged that McCluskey or Tirey had knowledge that he was in a cell with Smith.  Therefore, there is no evidence demonstrating that McCluskey or Tirey were subjectively aware that Thomas was in the cell with Smith and that they failed to take reasonable measures to abate the risk of harm.  In addition, Thomas has not presented any evidence demonstrating that McCluskey and Tirey were subjectively aware that minor inmates were likely to be placed in a cell with an adult inmate.

Thomas asserts that Tirey and McCluskey failed to protect him from the assault and that they were deliberately indifferent because they failed to implement a formal policy requiring that minor inmates be segregated from adult inmates.  Tirey and McCluskey argue that there was a clear policy in place requiring the segregation of minor and adult inmates.  McCluskey testified that it was "an understood policy" that

minors were to be segregated from adults. (McCluskey Depo. at 9).  Tirey testified

in his deposition that Thomas should not have been placed in a cell with Smith (Tirey

Depo. at 9) and that at the time of the incident, jail policy prohibited Thomas from

being placed in a cell with Smith.  (Tirey Depo. at 51-52).  Collins also testified at his

deposition that it was the jail policy that juveniles would not be placed with adults.

(Collins Depo. at 42).  Further, jail employees Philip Robinson, James Woodley,

Arthur Armstrong, Albert Steadman, Charlie Skalnick, and Frank McGinty all

testified during depositions that there was a policy in place at the time of the incident

requiring that minors be housed separately from adults. (Robinson Depo. at 21,

Woodley Depo. at 17-18, Armstrong Depo. at 10, Steadman Depo. at 29, Skalnik

Depo. at 11-12, and McGinty Depo. at 7).   The deposition testimony of these

employees indicates that jail employees understood that minors were to be placed

separately from adults.  In addition, Tirey and McCluskey presented evidence that a

memorandum was distributed to all jail employees in December 2001 stating that

even if a juvenile has been adjudicated as an adult, the juvenile was not to be housed

in adult housing units (doc. 110, exhibit L).  Tirey and McCluskey have presented

sufficient evidence demonstrating that there was a clear policy requiring that minors

be segregated from adult inmates.  Although this policy may not have been formally

adopted, it is clear from the deposition testimony of jail employees that the policy of

the jail was to segregate minors from adult inmates.  Thomas has not presented any evidence demonstrating that Tirey and McCluskey failed to implement such a policy or that jail employees were not aware of the policy.  The evidence indicating that Tirey failed to "formally adopt" such a policy does not rise to the level of deliberate indifference to Thomas's constitutional rights.

Thomas also claims that Tirey and McCluskey were deliberately indifferent because they failed to implement procedures to carry out the policy of keeping minors separate from adult inmates.  Thomas presented evidence showing that there was no requirement that jail employees place a notification on the outside of a minor's cell indicating that the inmate is a minor should be segregated from the adult inmate population.  However, Tirey and McCluskey presented evidence that the information that a specific inmate was a minor was available to jail employees.  McCluskey testified in his deposition that the information that a specific inmate was a minor was available through the booking computer, the inmate file, and through the common knowledge of the jail staff.  (McCluskey Depo. at 25).  He also testified that the jail staff would have known that Thomas was a minor.  (McCluskey Depo. at 25).  Robinson testified by deposition that "[w]e don't have a lot of juveniles in this place, so its widely known who is and who is not [a minor], due to the numbers." (Robinson Depo. at 20).  Similarly, other jail employees testified that they were familiar with

21

which inmates were minors or they could determine which inmates were minors through sources such at the booking records on the computer, supervisors' directions, the chain of command, or word of mouth. (Lockhart Depo. at 12; Armstrong Depo. at 18, 52; Skalnik Depo. at 12-13; Burton Depo. at 26; and McGinty Depo. at 10). Tirey and McCluskey also presented evidence indicating that they were not aware of any prior incidents at the jail in which a minor inmate was placed in a cell with an adult or in which a minor inmate was assaulted by an adult inmate. McCluskey testified in his deposition that he was not aware of any other incident whereby a member of the jail staff placed a minor inmate in a cell with an adult and that he was surprised by the incident surrounding Thomas and Smith. (McCluskey Depo. at 99). Tirey testified that there had been no reported rapes at the jail since he had been sheriff and that prior to this incident, he was not aware of any situation at the jail in which an adult inmate was placed with a juvenile. (Tirey Depo. 37).

The evidence shows that the information on inmate's ages was made available to all jail employees and, as stated earlier, it was the policy of the jail that minors were to be segregated from the adult inmate population. While the information may not have been available in the most efficient manner, the evidence establishes that no similar incidents had occurred at the jail in the past. The failure of Tirey and McCluskey to require that minor inmates be identified as such on the outside of the

cell doors does not rise to the level of deliberate indifference in violation of the plaintiff's constitutional rights.

Thomas argues that "[T]he claims against Tirey and McCluskey are primarily claims regarding their supervisory position ..." (doc. 115). Specifically, Thomas claims that Tirey and McCluskey failed to properly supervise jail employees, and that this failure to supervise amounted to deliberate indifference. In *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), the court addressed when a failure to supervise amounts to liability under § 1983. The court in *Hartley* stated:

> It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.' *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). 'Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.' *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper 'custom or policy ... result[s] in deliberate indifference to constitutional rights.' *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986)).

*Hartley*, 193 F.3d at 1269.

23

Tirey and McCluskey cannot be held liable under § 1983 for the acts of jail employees under a theory of vicarious liability or respondeat superior liability. To prove supervisory liability under § 1983, Thomas must show a causal connection between the actions of Tirey and McCluskey and the alleged deprivation. Thomas has not presented any evidence demonstrating that either Tirey or McCluskey "personally participated" in the decision to place Thomas and Smith in a cell together. *Id*. Although a causal connection can be established through evidence of "obvious, flagrant, rampant" deprivations, *id*., Thomas has not presented any evidence of prior inappropriate acts by jail employees that should have put Thomas or McCluskey on notice that a jail employee may place minors in cells with convicted adult inmates. Thomas has not presented any evidence demonstrating that jail employees had a history of placing juvenile inmates in cells with adult inmates in violation of jail policy, and he has not presented any evidence demonstrating that there was a history of juveniles being harmed at the jail or of rape at the jail. Further, Thomas has not presented any evidence demonstrating anything close to "history of widespread abuse" that would have put Tirey and McCluskey on notice that they needed to correct an alleged deprivation. *Id.* A causal connection can also be demonstrated through a custom or policy that results in deliberate indifference, *id.*, but there is no evidence indicating that Tirey or McCluskey implemented any sort of policy prior to

the alleged incident that would have led a jail employee to believe that placing a juvenile inmate with an adult inmate was permitted by Tirey and McCluskey.  The evidence actually establishes that Tirey and McCluskey took steps to ensure the employees were aware that the jail policy required that minors were to be segregated from adult inmates.  Employees of the jail received memorandums stating the jail policy regarding the separation of minors from adult inmates (doc. 110, exhibit L). All jail employees, including defendant Collins, signed a copy of the memorandum indicating that they understood the policy (doc. 110, exhibit L).  Jail employees testified that they understood that jail policy required that minors were to be segregated from the adult inmate population.  Thomas has not established that there is a genuine issue of material fact as to whether Tirey and McCluskey's supervision of jail employees amounted to deliberate indifference.

Lastly, Thomas claims that the training and hiring practices of Tirey and McCluskey were inadequate and that they amounted to deliberate indifference.  Tirey and McCluskey presented evidence indicating that they followed the proper procedures for hiring staff by hiring applicants that were supplied to them by the Walker County Civil Service Board.  Thomas argues Tirey and McCluskey failed to follow policy when hiring Collins and that they failed to discover that Collins had been discharged for misconduct while working in a prior job.

In *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1300 (11th 2001), a city employee sued the city and the former city manager (Neal) alleging sexual harassment and rape by the manager.  The plaintiff claimed that the city was liable under § 1983 because city officials were deliberately indifferent in hiring Neal by failing to investigate Neal's background.  *Id.* at 1313.  The court stated that to impose liability under § 1983 based on a hiring decision, the plaintiff must demonstrate that the official

> disregarded a known or obvious consequence of hiring the applicant.  It is not sufficient under this standard that a municipal actor's inadequate screening of an applicant's record reflects an 'indifference' to the applicant's background. [*Board of Commissioners of Bryan County, Okla. v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382, 1392].  Rather, a plaintiff must demonstrate that the municipal hiring decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow from the decision.  *Id.*

*Griffin*, 261 F.3d at 1313 (11th 2001).  The court held that the evidence was sufficient for a finding that inadequate screening of Neal's background "was so likely to result in sexual harassment that the City could reasonably be said to have been deliberately indifferent to Griffin's constitutional rights."  *Id.*  Before hiring Neal, the court found that there were a number of "red flags' that indicated that he would have problems with sexual harassment.  *Id.* at 1314.  The city was "inundated" with information indicating that Neal had problems with sexual harassment and dealing with women. The information provided contained "explicit warnings" of prior sexual harassment

charges that had been filed against Neal.  *Id.*  A concerned citizen raised the concerns about Neal's past sexual harassment at a city meeting, but the concerns were disregarded.  *Id.*  Testimony indicated that Neal was a "known  womanizer."  *Id.*  Further, before hiring Neal, city officials were aware that Neal was currently sexually harassing city employees before he was confirmed as the city manager.  *Id.*  The court held that the evidence supported the conclusion that the city ignored a known or obvious risk that Neal was highly likely to engage in sexual harassment if hired by the city.  *Id.*

Unlike the facts of *Griffin*, there is no evidence demonstrating that Tirey and McCluskey were aware of a "known or obvious risk" that Collins was likely to ignore the policy of segregating minors from adult inmates.  Thomas presented evidence that Collins had been discharged from a prior job because of misconduct.  However, this evidence alone does not establish that Tirey and McCluskey were aware that by hiring Collins, Thomas would be jailed under conditions presenting a substantial risk of serious harm.  Although Thomas argues that Tirey and McCluskey failed to run a criminal background check on Collins, there is no evidence showing that a criminal background check was not completed.  Tirey testified in his deposition that he did run a criminal background check on Collins (Tirey Depo. at 40).  Under *Griffin*, where the city was provided with numerous "red flags" concerning the applicant, there is

27

insufficient evidence under the facts of this case to demonstrate that Tirey and McCluskey ignored a "known and obvious" risk that Collins was likely to ignore jail policy.

Thomas has also failed to present sufficient evidence demonstrating that the training practices of Tirey and McCluskey amounted to deliberate indifference. Employees were required to complete a jail management training course along with on-the-job training.  (Tirey Depo. at 75).  As stated earlier, it was clear from the evidence presented that there was a clear policy in place that required minors to be separated from adult inmates and Thomas has not presented any evidence demonstrating that jail employees were not aware of this policy.

Thomas has failed to establish any genuine issue of material fact whether defendants Tirey and McCluskey acted with deliberate indifference to his rights. Without such evidence, Thomas's § 1983 claims against Tirey and McCluskey must fail.  Wherefore, Tirey's and McCluskey's motions for summary judgment shall be GRANTED.

## C. Collins

Collins argues that he is entitled to summary judgment because the evidence demonstrates that his conduct did not amount to deliberate indifference.  Collins testified by deposition that he knew the jail policy required minors to be segregated

28

from adult inmates and that this policy was designed to prevent minor inmates from being "molested" by adult inmates. (Collins Depo. at 42, 89). Although he testified in his deposition that he never placed a minor inmate in a cell with an adult (Collins Depo. at 42-43, 61-62), there is evidence from which a jury could determine that Collins did place Thomas and Smith in a cell together. Both Tirey and McCluskey testified that Collins placed Thomas and Smith together. (Tirey Depo. at 28 and McCluskey Depo. at 42). Further, there is evidence establishing that Collins moved Thomas and Smith from one cell and placed them in another cell. (Thomas Depo. at 59). This is evidence from which a jury could find that Collins was subjectively aware that Thomas, a minor inmate, and Smith, an adult inmate, were housed in a cell together, and that he disregarded the risk associated with housing a minor pre-trial detainee with a convicted adult inmate. The court finds that Thomas has presented sufficient evidence from which a jury could find that Collins acted with deliberate indifference. Wherefore Collins's motion for summary judgment shall be DENIED.

## II. State Law Claims[3]

## A. Walker County Commission

The court dismissed the state law claims brought against the Board that alleged

---

[3]All state law claims that were alleged against Tirey and McCluskey have been dismissed. (doc. 37)

negligent hiring and negligent retention. (doc. 37).  With respect to remaining state law claims, plaintiff alleges that the defendants negligently operated and managed the jail.  Specifically, Thomas alleges that the defendants entrusted the jail to unfit employees, failed to properly supervise employees, failed to monitor and supervise inmates and failed to incorporate policies that would protect Thomas.  However, as stated earlier, the Board has a duty to build, fund, and maintain the jail.  Ala. Code § 11-14-10.  *See also Keeton*, 558 So. 2d at 886.  The Board does not have any duties relating to the day-to-day operation of the jail such as supervising employees and inmates. *See Marsh*, 268 F.3d at 1027 and *Turquitt*, 137 F.3d at 1289.  The evidence indicates that the Board fulfilled its duties related to the jail facilities.  Thomas has not presented any evidence establishing that he and Smith were placed together in a cell because of overcrowding, insufficient space or even because of a failure to implement a policy of segregating juveniles from adult inmates.  Therefore, the Board cannot be held liable for negligence because there is no evidence indicating that they failed to fulfill their duties to build, fund, and maintain the jail.  Therefore, the Board is entitled to summary judgment as to any remaining state law claims for negligence.

## B. Collins

Collins argues that he is entitled to sovereign immunity under Article I, § 14

of the Alabama Constitution, and therefore, the state law claims alleged against him should be dismissed.  Thomas does not contest that the state-law claims asserted against Collins should be dismissed.  Article I, § 14 of the Alabama Constitution "bars any suit against the state of Alabama or its agencies[, and] grants immunity to state officers and employees in their official and individual capacities, when the action is, in reality, a suit against the state." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430-31 (11th Cir. 1997).  A suit brought against a sheriff or a sheriff's deputy in his individual capacity alleging negligence in performance of statutory duties is treated as a suit against the state.  *Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994).  Although there are situations in which a sheriff is not entitled to immunity under § 14, Thomas's claim that Collins acted negligently in performance of his duties does not fall within any of those exceptions.  Therefore, the court shall DISMISS all state law claims against Collins.  *See Lancaster*, 116 F. 3d 1419, 1431 (holding that a suit brought against a jailer in his individual capacity alleging negligent performance of his statutory duties is a suit against the state).

## **CONCLUSION**

Having considered the foregoing, the court finds that the Plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial against the Walker County Board of Commissioners, John Mark Tirey, and Trent

McCluskey.  It is therefore **ORDERED** summary judgment be **GRANTED** in favor of these defendants, and the Plaintiff's claims against these Defendants shall be **DISMISSED WITH PREJUDICE**.  The court finds that Plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial on the state law claims brought against Alvin Collins.  It is therefore **ORDERED** that summary judgment shall be **GRANTED** in favor of Collins on the state law claims asserted, and the Plaintiff's state law claims asserted against Collins shall be **DISMISSED WITH PREJUDICE**.

The court finds that, in the light most favorable to the nonmoving party, genuine issues of material fact remain as to the claims asserted under 42 U.S.C. § 1983 against Collins.  It is therefore **ORDERED** that Collins's motion for summary judgment as to the § 1983 claims shall be **DENIED**.

**DONE** and **ORDERED** this the 6th day of September, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE